UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

LUIS ROSALES,

                    Petitioner,

          -vs-                          **No. 6:13-CV-6004(MAT)**
                                        **DECISION AND ORDER**

THOMAS LAVALLEY,

                    Respondent.

───────────────────────────────

## I.    Introduction

Petitioner <u>pro</u> <u>se</u> Luis Rosales ("Petitioner") is serving an
aggregate prison term of 25 years to life as the result of an
April 19, 1991 judgment entered in the New York State Supreme
Court, New York County, following a jury verdict convicting him of
second degree murder and lesser charges. He now seeks a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he was
confined unconstitutionally in a prison Special Housing Unit
("SHU") as the result of an adverse disciplinary ruling at
Southport Correctional Facility ("Southport") on September 20, 2010,
finding him guilty of violating several prison rules. The claims in
the instant habeas petition pertain only to the September 20, 2010
hearing and not to Petitioner's underlying criminal convictions and
sentence.

## II.   Factual Background and Procedural History

During a random cell-search on August 28, 2010, a Southport
corrections officer confiscated from Petitioner's cell a
state-owned pillow that had been ripped open and then re-sewn.

Inside the pillow, the officer found three packages containing tobacco and one package containing what was later determined to be marijuana. Petitioner was issued two misbehavior reports, charging him with violating rules of inmate behavior 113.23 (possession of contraband), 113.25 (drug possession), and 116.10 (destruction of state property).

On September 3, 2010, a Tier III disciplinary hearing was conducted by hearing officer James Esgrow. The theory of Petitioner's defense was that the corrections officers who searched his cell planted the contraband there in order to retaliate against him for filing grievances. The following witnesses testified at the hearing: inmate Mike Morton, Sergeant Daniel Chapman, Correction Officers Byron Potter and Matthew Matwiejow, and Prison Nurse Karen Weaver. Inmate Morton, who was called by Petitioner, testified that he did not see the cell-search, but he heard officers, whom he could not identify, enter the cell. Sergeant Chapman and Corrections Officers Potter and Matwiejow testified that the search of Petitioner's cell was conducted at random pursuant to state policy and they denied retaliating against him or being aware of any other prison staff who had discussed such retaliation.

When the hearing continued on September 13, 2011, Nurse Weaver was called to testify as to hearing test results indicating that Petitioner's hearing was "adequate for reception of speech and most environmental sounds" and thus he was able to hear a videotape of

the cell search played during the hearing. Transcript of Hearing at 27 ("Tr."), Respondent's Exhibit ("Resp't Ex.") B.

Inmate Malik Olivera appeared at the hearing but changed his mind about testifying; the hearing officer asked him if anyone was "pushing up on" him or "offering any rewards not to testify", and Olivera replied in the negative. Id. at 12-13.

The hearing officer declined Petitioner's request to call his attorney, William G. Bauer, Esq., Inmate Grievance Investigator Guessner, and Superintendent Griffin, who allegedly had "knowledge of what [he's] been going through" in terms of harassment by prison staff. See Tr. at 9-11. The hearing officer also declined Petitioner's request to present evidence regarding a cell search that had occurred on August 26th, two days before the incident at issue. E.g., id. at 17-18, 21-22. Petitioner stated that the search on the 26th of August lasted over 25 minutes, and the officers did not find any contraband. Then, on the 28th, the same officers found contraband in his pillow in a very short amount of time. According to Petitioner, this was circumstantial evidence that the officers planted the contraband and framed him.

The hearing officer found Petitioner guilty as charged in the misbehavior reports and sentenced him to a period of 18 months confinement in the SHU, of which six months were suspended and deferred for 180 days. Restitution in the amount of $8.40 was imposed for the pillow. Id. at 30-31.

Petitioner administratively appealed the result of the disciplinary hearing, claiming that (1) he was denied meaningful assistance in the preparation of his defense; (2) he was denied the right to present certain testimonial and documentary evidence in support of his retaliation defense; and (3) the hearing officer was not impartial. On November 12, 2010, the hearing officer's determination was affirmed.

On November 29, 2010, Petitioner filed a <u>pro se</u> petition pursuant to Article 78 of New York's Civil Practice Law and Rules ("C.P.L.R.") in the Supreme Court, Chemung County, challenging the adverse disciplinary hearing. Petitioner raised the same grounds asserted in connection with his administrative appeal. On July 18, 2011, the Supreme Court dismissed the petition on the merits, and on August 2, 2011, Petitioner appealed to the Appellate Division, Third Department.

On August 2, 2012, the Appellate Division affirmed the Supreme Court's dismissal of Petitioner's Article 78 application. <u>Rosales v. Pratt</u>, 98 A.D.3d 764 (3d Dep't 2012). Petitioner filed a <u>pro se</u> request for leave to appeal in the New York Court of Appeals, raising the same claims that he had raised in his Appellate Division brief. On October 30, 2012, the Court of Appeals denied leave to appeal. <u>Rosales v. Pratt</u>, 19 N.Y.3d 816 (2012).

On October 16, 2011, while his Article 78 petition was pending, Petitioner was released from SHU and placed in the general

-4-

prison population. Petitioner has completed his term of SHU confinement in connection with the August 28, 2010 incident. <u>See</u> Resp't Ex. R.

In his timely-filed petition, Petitioner raises the following grounds for relief: (1) he was denied his Due Process right to adequate employee assistance to prepare for the hearing; (2) the hearing officer violated his Due Process rights by refusing to allow him to call certain witnesses who would have supported his retaliation defense; and (3) the hearing officer did not consider Petitioner's retaliation defense.

Respondent filed an answer and opposition memorandum of law, conceding that Petitioner exhausted his claims that he received inadequate employee assistance and was denied the right to call witnesses by raising them in his Article 78 proceeding and framing them as violations of his federal Due Process rights. Respondent asserts, however, that  Petitioner failed to exhaust his claim regarding the hearing officer's failure to consider his retaliation defense because, when he raised this claim in his Appellate Division brief and leave application, he failed to support it with any federal constitutional authority. Respondent contends that the retaliation-defense claim is procedurally defaulted because Petitioner has no avenues administratively or in the state courts by which he can exhaust the claim. As Respondent notes, Petitioner has already exercised his right to administratively appeal the

disciplinary determination, and the statute of limitations for another Article 78 petition has expired. In the alternative, Respondent argues, Petitioner's habeas claims are moot because the sole relief sought was his release from SHU confinement, which was accomplished prior to the petitioner's filing. Finally, Respondent contends, Petitioner's claims are not cognizable in this Section 2254 proceeding because they pertain to the conditions of his confinement rather than the overall length of his confinement.

Petitioner filed a reply brief, asserting that he suffers from a collateral consequence sufficient to present a live case or controversy for Article III purposes. Specifically, Petitioner asserts that he has been required to a complete a "drug program for the Parole Board", which he would not have had to complete in the absence of being found guilty of a drug-related infraction.

For the reasons discussed below, the Court denies Petitioner's request for a writ of habeas corpus, and dismisses the petition.

## III. Analysis of the Petition

### A.    Exhaustion and Mootness

Because Petitioner's claims are easily resolved on the basis that they are not cognizable in this § 2254 proceeding, the Court need not address Respondent's arguments regarding mootness, non-exhaustion, and procedural default. See Salahuddin v. Unger, 04 Civ. 2180, 2005 WL 2122594, at *4-*5 (E.D.N.Y. Sept. 2, 2005) (noting "some merit" to petitioner's argument that deeming

-6-

challenge moot would enable respondent to evade judicial review, but declining to decide issue because petition lacks merit).

**B.   Cognizability of Petitioner's Claims**

Title 28, Section 2254 "is explicit that a federal court is to entertain an application for a writ of habeas corpus 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" Wainwright v. Goode, 464 U.S. 78, 83-84 (1983) (quoting 28 U.S.C. § 2254(a)), reh'g denied, 423 U.S. 1092 (1984). Challenges to the validity of prison administrative actions that affect the fact or length of the prisoner's confinement are properly brought under 28 U.S.C. § 2254. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); see also Poventud v. City of N.Y., 750 F.3d 121, 128 (2d Cir. 2014) (noting that Preiser "declined to recognize a distinction where the [prisoner's] challenge [to his imprisonment] was to a final administrative decision") (citing Preiser, 411 U.S. at 489).

However, as the Second Circuit has observed, "many intra-prison administrative or disciplinary decisions that could result in deprivations in violation of the Constitution do not

-7-

affect the fact or length of a prisoner's confinement[,]" <u>Jenkins v. Haubert</u>, 179 F.3d 19, 23 (2d Cir. 1999). These include "placement in solitary confinement or keeplock, . . . or some other form of confinement more restrictive than that imposed on the general prison population." <u>Id.</u>[1] Here, the punishment imposed on Petitioner following the adverse disciplinary hearing was 18 months of confinement in SHU. This punishment indisputably did not affect the fact or overall length of Petitioner's confinement, and therefore habeas corpus is not a proper remedy for his constitutional claims regarding the disciplinary hearing. <u>See</u>, <u>e.g.</u>, <u>Green v. Bradt</u>, 2012 WL 130274 (W.D.N.Y. Jan. 17, 2012) (dismissing as not cognizable habeas claims regarding prison disciplinary hearing that resulted in keeplock confinement because punishment did not affect the overall length of petitioner's confinement); <u>see also</u> <u>Welch v. Mukasey</u>, 589 F. Supp.2d 178, 183 n.3 (N.D.N.Y. 2008) (SHU confinement); <u>Green v. Duncan</u>, No. 01-cv-886, 2007 WL 781927, at *2-3 (N.D.N.Y. Mar. 13, 2007)

---

[1]

The Second Circuit has observed that dictum in <u>Preiser</u> "left open the question of whether federal habeas corpus is available to prisoners who challenge decisions imposing restrictive conditions of confinement." <u>Jenkins</u>, 179 F.3d at 23 (citing <u>Preiser</u>, 411 U.S. at 499 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.")). Although this dictum has engendered much discussion in the circuit courts, <u>id.</u> (citing cases), the law governing a habeas petitioner's claims is limited to the holdings, not dicta, of the Supreme Court. <u>See</u> <u>Tueros v. Greiner</u>, 343 F.3d 587, 593-94 (2d Cir. 2003) (dicta in Supreme Court decision was not clearly established federal law that could form basis for habeas relief under Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1)) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

(keeplock and loss of privileges); <u>H'Shaka v. Conway</u>, 06 Civ. 0101, 2006 WL 1418601, at *2 (S.D.N.Y. May 22, 2006) (SHU confinement).

In his reply brief, Petitioner asserts that as a result of the finding that he violated a drug-related rule, he "must complete a drug program for the Parole Board". Reply, ¶ 6 (emphasis omitted). He states that he has not completed the drug program because it requires him to admit possessing the marijuana found in his pillow, which he refuses to do because he maintains that the marijuana was planted there by corrections officers. <u>Id.</u>, ¶ 7 & n.1. Petitioner insists that because he has not completed the drug program, the Parole Board "will deny" him release. <u>Id.</u>, ¶ 7 (emphases omitted). As an initial matter, the Court has reviewed the hearing officer's disposition and relevant documents in the record, and it is clear that participation in a drug treatment program was <u>not</u> a component of Petitioner's punishment. Rather, the requirement of participation in a drug treatment program is at most an incidental effect of the disciplinary procedure challenged in this case.

In any event, even assuming that mandatory participation in a drug treatment program was a direct consequence of the disciplinary ruling, the Court's conclusion is the same. "[U]nder <u>Preiser</u> habeas jurisdiction is proper where a challenge to prison conditions would, if successful, <u>necessarily</u> accelerate the prisoner's release." <u>Ramirez v. Galaza</u>, 334 F.3d 850, 859 (9th Cir. 2003) (emphasis supplied; citing <u>Neal v. Shimoda</u>, 131 F.3d 818, 824

(9th Cir. 1997)). The requirement that Petitioner participate in a drug treatment program does not inevitably affect the fact or duration of Petitioner's confinement. That is, expungement of the disciplinary ruling in Petitioner's case would not necessarily accelerate his release from prison. Instead, success in this action at best means an opportunity for Petitioner to seek conditional release from a Parole Board that could deny parole on any ground already available to it. See Ramirez, 334 F.3d at 859 ("[I]f successful [in his challenge to a disciplinary hearing], Ramirez will not necessarily shorten the length of his confinement because there has been no showing by the State that the expungement Ramirez seeks is likely to accelerate his eligibility for parole[,]" and therefore his suit is properly brought under 42 U.S.C. § 1983 rather than 28 U.S.C. § 2254.). Where, as here, "a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence[,]" "habeas jurisdiction is absent[.]" Id.; see also Corral v. Gonzalez, 1:12-cv-01315-LJO-SKO-HC, 2013 WL 635933, at *15 (E.D. Cal. Feb. 20, 2013) ("Where a successful suit's effect on the duration of confinement is less likely, the prisoner has a remedy by way of § 1983, and the matter is not within the core of habeas corpus.") (citing, inter alia, Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (42 U.S.C. § 1983 action in which inmates brought procedural due process challenges to administrative placement in

the harsh conditions of a supermax prison where such placement precluded parole consideration).

## IV.  Conclusion

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore leave to appeal in forma pauperis is denied. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

**SO ORDERED.**                          S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    Rochester, New York
          November 6, 2014